**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

Civil Action No. 11-cv-03330-MSK

**GLORIA A. CLAUSS,**

       **Plaintiff,**

v.

**MICHAEL J. ASTRUE, Commissioner of Social Security,**

       **Defendant.**

---

**OPINION and ORDER**

---

**THIS MATTER** comes before the Court on Plaintiff  Gloria A. Clauss' appeal of the

Commissioner of Social Security's final decision denying her application for Disability

Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and

Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-

83c.  Having considered the pleadings and the record, the Court

      **FINDS** and **CONCLUDES** that:

  **I.**     **Jurisdiction**

      Ms. Clauss filed claims for disability insurance benefits pursuant to Title II and

supplemental security income pursuant to Title XVI.  She asserted that her disability began on

December 14, 2006.  After her claims were initially denied, Ms. Clauss filed a written request for

a hearing before an Administrative Law Judge ("ALJ").  This request was granted and a hearing

was held.

After the hearing, the ALJ issued a decision with the following findings: (1) Ms. Clauss met the insured status requirements of the Social Security Act through June 30, 2010; (2) she had not engaged in substantial gainful activity since December 14, 2006; (3) she had four severe impairments: degenerative disc disease, spinal stenosis, carpal tunnel syndrome, and status post cancer; (4) none of these impairments, whether considered individually or in combination, met or were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"); (5) she had the Residual Functional Capacity ("RFC") to perform light work but was limited to standing or walking no more than six hours in and eight hour workday, occasionally stooping and crouching, and occasionally bilaterally handling, grasping, or fingering; (6) Ms. Clauss was unable to perform any of her past relevant work; and (7) Ms. Clauss was not disabled because she was able to perform  other jobs in the national economy, including photo counter clerk and investigator of dealer accounts.

The Appeals Council denied Ms. Clauss' request for review of the ALJ's decision. Consequently, the ALJ's decision is the Commissioner's final decision for purposes of judicial review.  *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).  Ms. Clauss' appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

## II.     Material Facts

Having reviewed the record in light of the issues raised, the Court summarizes the material facts as follows, with additional facts included as necessary as part of the Court's analysis.

In 2004, Ms. Clauss had a surgical fusion of her spine at the C5-C6 level due to degenerative disc disease.  Soon thereafter, she began visiting the Salud Family Health Center

for treatment.  She complained of back pain, and for the most part was examined and was prescribed medication for pain and anxiety.  Sometimes she just got a refill of the medication.  She visited Salud Family Health twenty times from December 2005 to July 2010.  Twelve of these visits involved a physical exam.

Although she saw different medical personnel, Dr. Jaramillo was her regular doctor.  He saw Ms. Clauss at least fourteen times, ten of which included a physical exam.  Dr. Jaramillo's notes from these exams included the following information about Ms. Clauss: on January 29, 2008, he noted chronic back pain; on November 24, 2008, he noted that her spine had a relatively full range of motion; on August 18, 2009, he noted that she was in no apparent distress; on September 14, 2009, he noted that her neck was normal but that her back had decreased flexion and extension, tension, and spasms and that Ms. Clauss complained of mild to moderate pain aggravated by activity but improved with pain medication; on November 3, 2009, he noted normal flexion and extension in her back, with no tenderness; finally, on June 14, 2010, he noted a normal range of motion for her musculoskeletal system and extremities but that she still complained of lower back pain.  These notes were supplemented with an April 28, 2010, MRI which indicated mild stenosis between the L5 and S1 vertebrae, likely caused by degenerative disc disease.

Ms. Clauss also received sporadic counseling at Salud Family Health.  She saw Mr. Lowinger, a licensed psychotherapist, several times from December 2005 to November 2009.  His treatment notes reflect Ms. Clauss' reports of anxiety and stress, as well as sporadic attendance at counseling sessions.

Ms. Clauss was prescribed several medications.  From 2006 to 2010 she was prescribed either Vicodin or Percocet for her pain.  Her Vicodin prescription dose was 10/500 milligrams

until August 18, 2009, when it was reduced to 5/500 milligrams.   One month later, she was

prescribed Percocet at 7.5/500 milligrams per dose.  In November 9, 2009, she requested a

switch back to Vicodin and was given a prescription for 7.5/500 milligram doses.  She was also

prescribed Klonopin for her anxiety.  According to the record, these prescriptions were filled by

either the Carriage House, a Boulder, Colorado health clinic, or via fax at the request of Dr.

Jaramillo or another medical provider.

Along with treatment notes, several medical opinions were also included in the record.

Dr. Cavanaugh, an orthopedist who reviewed Ms. Clauss' x-rays on June 8, 2010, at the request

of Dr. Jaramillo, stated that she had marked arthritis but did not need surgery and recommended

exercise.  Mr. Lowinger, Ms. Clauss' psychotherapist, completed a Mental Health Report on

November 28, 2008, in which he indicated that Ms. Clauss could work part time but probably not

full time.

Dr. Jaramillo, Ms. Clauss' treating physician, completed two documents prior to Ms.

Clauss' hearing in which he opined that she was disabled.  The first, completed in November 3,

2009, was a Colorado Department of Human Services MED-9 form.  Dr. Jaramillo noted that he

was Ms. Clauss' examining physician and checked a single box that indicated that he considered

Ms. Clauss not totally disabled, but that she had an impairment that limited her ability to work.

There was no other notation or opinion contained on this document.   The second opinion was a

hand-written letter drafted in July 10, 2010.  Dr. Jaramillo opined that Ms. Clauss was disabled

from gainful employment due to diagnosed degenerative disc disease and arthritis.  He based this

opinion on her April 28, 2010 MRI.

In addition to these two opinions, Dr. Jaramillo completed a Physical RFC Assessment

on November 4, 2011.  In this document, Dr. Jaramillo described Ms. Clauss' physical

limitations.  He indicated on this form that Ms. Clauss was unable to lift over ten pounds, stand

or walk over two hours in an eight hour day, and use her hands for more than limited handling,

fingering, or feeling.  He also opined that her impairments met Listing 1.04 and that she would

not be able to work at the light exertional level.  According to Dr. Jaramillo, these opinions were

based on his past physical examinations of Ms. Clauss and her April 28, 2010, MRI.

It should be noted that Dr. Jaramillo's Assessment was obtained and submitted to the

District Court after both the hearing and the Appeals Council review was complete.  Because the

timing for the submission of this new evidence is an important threshold issue in this case, a brief

timeline is necessary.  Ms. Clauss' disability hearing was held July 29, 2010, and the ALJ issued

her decision on October 12, 2010.  Through counsel, Ms. Clauss submitted a Request for Review

of Hearing Decision/Order to the Appeals Council on December 10, 2010.  The Appeals Council

issued their decision on October 28, 2011.  It was not until November 4, 2011, that Dr. Jaramillo

prepared his Assessment.  According to Ms. Clauss' counsel, Dr. Jaramillo's Assessment was

not received until November 8, 2011.  There is no indication as to when Dr. Jaramillo received a

request for the Assessment from Ms. Clauss or her counsel.

In addition to the medical records and opinions, the evidence also contains several

documents relevant to the issues in this case.  According to a Function Report Ms. Clauss

completed on December 1, 2008, she was able to perform various activities of daily living during

the relevant time period.  She was able to take care of pets, prepare simple meals, do some

household chores, shop, attend church, and perform self-care.  Additionally, Ms. Clauss

submitted an IQ test at the hearing in support of her asserted limitations.  The test indicates

below-average cognitive functioning, including a math grade equivalency of 5.6.  Finally, several

documents outlining her work history indicate that she worked at least one day per week from January to October 2008 as a day laborer.

### III.    Issues Presented

Ms. Clauss raises three challenges to the Commissioner's decision: (1) the ALJ erred by failing to give controlling weight to Dr. Jaramillo's opinion; (2) the ALJ erred in determining that Ms. Clauss had the RFC to perform a limited range of light work; and (3) the ALJ erred in determining that there were a significant number of jobs in the national or regional economy that Ms. Clauss was able to perform.  Additionally, Ms. Clauss submitted Dr. Jaramillo's November 4, 2011, Assessment with her appeal to the District Court, which necessitates a preliminary determination as to whether that evidence requires a remand to the ALJ for its consideration.

### IV.    Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'  It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).  On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency."  *Branum v. Barnhart*, 385 F.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

## V.    Discussion

### A.    Additional Evidence

As noted, Ms. Clauss submitted a Physical Residual Functional Capacity Assessment completed by Dr. Jaramillo on November 4, 2011.  In this Assessment, Dr. Jaramillo set forth opinions as to Ms. Clauss' physical limitations, the cause of those limitations, the evidence upon which his conclusions are based, as well as opinions regarding Ms. Clauss' disability.  Ms. Clauss argues that this additional evidence necessitates a remand so that the ALJ can consider whether this evidence would have changed her decision.

The Commissioner argues that this evidence should be ignored because it is not material and Ms. Clauss did not have good cause for not submitting the evidence to the ALJ or the Appeals Council.

Pursuant to sentence six of 42 U.S.C. § 405(g):

The court…may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

Evidence is material under sentence six of § 405(g) if the ALJ's decision might reasonably have been different had the new evidence been before her when her decision was rendered.  *Wilson v. Astrue*, 602 F.3d 1136, 1148  (10th Cir. 2010) (citation omitted).  Good cause requires a claimant to show why he or she could not have obtained and submitted the new evidence to the ALJ or the Appeals Council.  *Id*. at 1149.

Turning to materiality, Dr. Jaramillo's Assessment is material because, had the ALJ reviewed his opinion, her decision might reasonably have been different.  At the hearing, the ALJ considered two opinions from Dr. Jaramillo, a Colorado Department of Human Services

MED-9 form dated November 3, 2009 and a hand-written letter dated July 20, 2010.  Neither, however, contained detailed information as to Ms. Krause's limitations. Dr. Jaramillo's opinion in the MED-9 form was limited to a checked box next to the following statement: "I find this individual is not totally disabled but does have a physical or mental impairment that substantially precludes this person from engaging in his/her usual occupation…." In the hand-written letter, Dr. Jaramillo opined that Ms. Clauss was "…disabled from gainful employment secondary to significant lumbar disc disease as well as cervical disc disease…."  He based this opinion on an MRI performed on April 28, 2010, that showed "…multi-level lumbar disc disease degeneration including displacement of a nerve root as well as chronic inflammation from long-standing arthritic changes."  He also stated that "… since 2006 [Ms. Clauss] has been significantly disabled and requiring pain medications for activity of daily living."

The ALJ did not give full weight to Dr. Jaramillo's November 3, 2009 opinion. Although she found that this opinion was entitled to some weight because "…it opines that [Ms. Clauss] cannot do her past relevant work but is not totally disabled," she also found that the opinion addressed the ultimate question of disability, an issue reserved for the Commissioner.

The ALJ also gave little weight to Dr. Jaramillo's July 10, 2010 letter, dismissing it as "a well-meaning but misguided attempt to assist the claimant in obtaining benefits rather than an objective evaluation of [Ms. Clauss'] impairments and limitations."  She also deemed the opinion conclusory and noted that it did not specify functional limitations.  Finally, she noted that Dr. Jaramillo's opinion that Ms. Clauss was disabled was an opinion on an issue reserved for the Commissioner, per 20 C.F.R. § 404.1527(d).

In contrast to his first two opinions, Dr. Jaramillo's November 4, 2011, Assessment offered a more complete opinion, particularly as to Ms. Clauss' functional limitations.  He

opined that she could occasionally lift up to ten pounds, stand or walk less than two hours in an eight hour workday, and must periodically alternate sitting and standing to relieve her pain.  He also indicated that she was limited in her ability to climb stairs, push or pull, reach, handle, finger, or feel with her hands.  Finally, he concluded that Ms. Clauss met the criteria for Listing 1.04 and would not be able to work at the light exertional level.   He based these opinions on the results of the April 28, 2010, MRI and his own physical exams, which indicated physical limitations caused by degenerative cervical and lumbar disc disease.

This opinion addressed several of the shortcomings the ALJ noted in Dr. Jaramillo's two other opinions.  He listed specific functional limitations caused by Ms. Clauss' back problems, along with the evidence supporting these opinions.  Additionally, his opinion was well-founded rather than conclusory.  Although Dr. Jaramillo again opined as to the ultimate question of disability, his other opinions regarding Ms. Clauss' functional limitations were exactly what the ALJ found lacking in his prior two opinions.

Because Dr. Jaramillo's November 4, 2011 opinion contained descriptions of Ms. Clauss' functional limitations and the evidence supporting those limitations, it is material.  Not only did this opinion address the ALJ's concerns with Dr. Jaramillo's two prior opinions, but his conclusions were based on evidence already in the record and relevant to the disability period in question.  Dr. Jaramillo's November 4, 2011, opinion drew from both timely medical records and his own physical examinations of Ms.Clauss during the period of her alleged disability.  This opinion directly addressed the ALJ's reasons for dismissing Dr. Jaramillo's other two opinions by including descriptions of Ms. Clauss' functional limitations.  As such, there is a reasonable probability that this opinion would have changed the ALJ's decision in this case.  Consequently, Dr. Jaramillo's November 4, 2011, opinion is material.

Although Dr. Jaramillo's November 4, 2011 opinion is material, Ms. Clauss has failed to show that she had good cause for not obtaining and submitting this evidence prior to her appeal to the District Court.  Ms. Clauss stated in her Opening Brief that "there is good cause for the failure to incorporate [Dr. Jaramillo's November 4, 2011, Assessment] into the record in the prior proceeding."  However, she does not explain what the "good cause" was.

Clearly, Ms. Clauss's was not represented by counsel at her hearing before the ALJ.  She explains that she hired counsel to represent her before the Appeals Council.  According to the record, the ALJ issued her decision on October 10, 2010.  Ms. Clauss, through counsel, filed a Request For Review of Hearing Decision/Order on December 10, 2010 which the Court understands to approximate the time that she hired counsel.  The Appeals Council issued its decision on October 28, 2011, more than ten months after Ms. Clauss obtained counsel.  But Dr. Jaramillo's report was not obtained until November 4, 2011, some eleven months after Ms. Clauss retained counsel, and after the Appeals Council made its decision.

The troublesome aspect of this scenario is the absence of explanation as to why it took Ms. Clauss  eleven months to get an report from Dr. Jaramillo.  Had this been a due to a delay on his part, that Ms. Clauss attempted to address, or some other unexpected impediment to timely submission, the Court might find that there was good cause for the delay.  But no explanation is offered.  In the absence of an explanation, the Court finds that Ms. Clauss has failed to show good cause for the late submission of Dr. Jaramillo's report. Accordingly, the Court declines to remand her case for further proceedings under sentence six of 42 U.S.C. § 405(g).

### B.      Dr. Jaramillo's Timely Submitted Opinions

Having declined to remand Ms. Clauss' case for consideration of Dr. Jaramillo's November 4, 2011, opinion, the Court turns to the ALJ's consideration of Dr. Jaramillo's other two opinions.

As noted, *supra*, the ALJ discussed Dr. Jaramillo's November 3, 2009 and July 20, 2010, medical opinions.  She found that the 2009 opinion was entitled to only some weight because it also offered an opinion regarding whether Ms. Clauss was disabled.  She also found that the 2010 opinion was entitled to little weight as it was conclusory, unspecific, contrary to the evidence, and stated that Ms. Clauss was disabled, an issue reserved for the Commissioner.

Ms. Clauss argues that the ALJ failed to give sufficient weight to Dr. Jaramillo's opinions.  According to Ms. Clauss, Dr. Jaramillo's opinions were based on a long-term treating relationship and objective evidence found in the record, including MRI findings and physical examinations of Ms. Clauss.

The Commissioner argues that the ALJ properly found that Dr. Jaramillo's opinions were statements on an issue reserved for the Commissioner and that Dr. Jaramillo's diagnoses are not adequate evidence to support his finding of disability because they do not reflect functional limitations and are not consistent with his own treating notes.

A treating physician's opinion is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1517(c)(2).  An ALJ must give specific and legitimate reasons to reject a treating physician's opinion or give it less than controlling weight.  *Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001).  Even if a treating

physician's opinion is not entitled to controlling weight, it is still entitled to deference and must

be weighed using the following factors:

> 1) the length of the treatment relationship and the frequency of examination;
> 2) the nature and extent of the treatment relationship, including the treatment
> provided and the kind of examination or testing performed; 3) the degree to which
> the physician's opinion is supported by relevant evidence; 4) consistency between
> the opinion and the record as a whole; 5) whether or not the physician is a
> specialist in the area upon which an opinion is rendered; 6) other factors brought
> to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01 (citation omitted); 20 C.F.R. § 404.1527.

An ALJ must give good reasons for the weight assigned to a treating source's opinion.  20 C.F.R.

§ 404.1517(c)(2).  These reasons must be sufficiently specific to make clear to subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinions and the

reason for that weight.  *Watkins*, 350 F.3d at 1301.

Only medical opinions are given special consideration.  20 C.F.R. § 404.1527(d)(3).

Opinions on issues reserved for the Commissioner are not medical opinions, even if they come

from a treating physician.  20 C.F.R. § 404.1527(d).  These include opinions that a claimant is

disabled or unable to work.  20 C.F.R. § 404.1527(d)(1).

The Court finds no error in the ALJ's assessment.  Although Dr. Jaramillo was Ms.

Clauss' treating physician, his medical opinions from both 2009 and 2010 were opinions on the

ultimate issue of whether Ms. Clauss was disabled.   Because this is an issue reserved for the

Commissioner under 20 C.F.R. § 404.1527(d), the ALJ properly discounted this opinion.

## C.        The ALJ's Step 4 RFC Analysis

In the Step 4 RFC analysis, the ALJ also assessed Ms. Clauss' statements regarding the

disabling effects of her pain.  She found that these statements were not consistent with the

record.  Specifically, she found that Ms. Clauss' activities of daily living conflicted with her

statements regarding the disabling effects of her pain.  Additionally, the ALJ found that Ms. Clauss' statements regarding the severity and intensity of her pain were not supported by the record because her reports of pain to her doctors did not match those in her disability application. The ALJ observed that Ms. Clauss had been able to work intermittently during her alleged disability, had visited doctors regarding her symptoms infrequently, had requested refills for her medication but no other medical care during several of those visits, and did not report symptoms consistent with her statements in her disability evaluation.  Finally, the ALJ gave limited weight to Dr. Jaramillo and Mr. Lowinger's opinions as inconsistent with the record.

Ms. Clauss contends that the ALJ erred in determining her RFC because he did not properly evaluate her symptoms, including her pain and anxiety, and improperly rejected Dr. Jaramillo and Mr. Lowinger's opinions.

The Commissioner argues that the ALJ adequately evaluated Ms. Clauss' RFC at Step 4. According to the Commissioner, Ms. Clauss' statements regarding her pain and anxiety, as well as her statements regarding the limiting effects of her pain and anxiety, were not supported by the record.  Additionally, Ms. Clauss' pain and anxiety were alleviated by medication.  Finally, the Commissioner asserts that the ALJ gave the correct weight to Dr. Jaramillo and Mr. Lowinger's opinions.

At Step 4 in the disability analysis, the ALJ is required to assess a claimant's RFC based on all relevant evidence, medical or otherwise.  20 C.F.R. § 404.1545.  As part of this evaluation, the ALJ must take into consideration all the claimant's symptoms, including subjective symptoms.  20 C.F.R. § 404.1529(a).  Subjective symptoms are those that cannot be objectively measured or documented.  One example is pain, but there are many other symptoms which may be experienced by a claimant that no medical test can corroborate.  By their nature, subjective

symptoms are most often identified and described in the testimony or statements of the claimant or other witnesses.

In assessing subjective symptoms, the ALJ must consider statements of the claimant relative to objective medical evidence and other evidence in the record. 20 C.F.R. § 04.1529(c)(4). If a claimant has a medically determinable impairment that could reasonably be expected to produce the identified symptoms, then the ALJ must evaluate the intensity, severity, frequency, and limiting effect of the symptoms on the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1); SSR 96-7p.

In the 10th Circuit, this analysis has three steps: 1) the ALJ must determine whether there is a symptom-producing impairment established by objective medical evidence; 2) if so, the ALJ must determine whether there is a "loose nexus" between the proven impairment and the claimant's subjective symptoms; and 3) if so, the ALJ must determine whether considering all the evidence, both objective and subjective, claimant's symptoms are in fact disabling. *Luna v. Bown*, 834 F.2d 161, 163-64 (10th Cir. 1987).[1] The third step of the *Luna* analysis involves a holistic review of the record. ALJ must consider pertinent evidence including a claimant's history, medical signs, and laboratory findings, as well as statements from the claimant, medical or nonmedical sources, or other persons. 20 C.F.R. § 404.1529(c)(1). In addition, 20 C.F.R. § 404.1529(c)(3) instructs the ALJ to consider:

> 1) [t]he individual's daily activities; 2) [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) [f]actors that precipitate and aggravate the symptoms; 4) [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms…; and

---

[1] The ALJ need not follow a rote process of evaluation, but must specify the evidence considered and the weight given to it. *Qualls v. Apfel*, 206 F3d 1368, 1372 (10th Cir. 2000).

7) [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Inherent in this review is whether and to what degree there are conflicts between the claimant's statements and the rest of the evidence. *Id.* Ultimately, the ALJ must make specific evidentiary findings[2] with regard to the existence, severity, frequency, and effect of the subjective symptoms on the claimant's ability to work. 20 C.F.R. § 404.1529(c)(4). This requires specific evidentiary findings supported by substantial evidence. *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988); *Diaz*, 898 F.2d at 777.

The Court is satisfied that the ALJ adequately evaluated Ms. Clauss' statements regarding her pain, but finds that the ALJ failed to adequately address her statements regarding her anxiety.

### 1.    Pain

With regards to Ms. Clauss' subjective complaints of pain, the ALJ did not explicitly follow the *Luna* analysis. However, the ALJ's analysis was sufficient because she found that: 1) Ms. Clauss had several severe impairments, including degenerative disc disease and spinal stenosis; 2) those severe impairments could produce her pain; but that 3) the evidence did not support Ms. Clauss' statements regarding the severity, frequency, and limiting effects of her

---

[2] Often these findings are described as "credibility determinations". Technically, the credibility assessment is as to particular testimony or statements. But this characterization often improperly leads ALJs and claimants to focus upon whether the claimant is believable or "telling the truth". Such focus is reflected in ALJ references to the "claimant's credibility" and claimants' umbrage on appeal at findings that suggest that they were untruthful.

Greater precision in distinguishing between the credibility of particular testimony as compared to general credibility of a claimant is helpful for subsequent review. It is also worth recognizing that determining the ontological truth or falsity of a claimant's statements is rarely necessary. Indeed, the searching inquiry required of the ALJ assumes that the claimant experiences a symptom that cannot be objectively documented – pain, confusion, ringing in the ears, tingling, nausea and the like. The focus of the inquiry need not be to determine whether the claimant is truthfully reporting his or her experience, but instead to determine whether such symptom corresponds to a severe impairment and whether its nature, intensity, frequency, and severity affects the claimant's ability to work. Careful analysis results in factual findings supported by substantial evidence. *See e.g. Diaz v. Sec. of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)

pain.  Because there is no dispute that Ms. Clauss' severe impairments could produce her pain,

the Court moves directly to an analysis of the third step.

The ALJ's analysis at this third step initially focused on Ms. Clauss' daily activities.  She

found that Ms. Claus reported the ability to care for her pets, perform light housework, shop,

cook, attend church, ride public transportation, and perform self-care.  Although these activities

cannot form the sole basis for rejecting a claimant's subjective symptoms, the ALJ appropriately

considered this evidence as one of several factors relevant to evaluating a claimant's subjective

symptoms.  *Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993); 20 C.F.R. §

404.1529(c)(3)(i).

The ALJ also found that Ms. Clauss engaged in part-time work during the relevant

disability period. [3]  According to the record, Ms. Clauss worked as a day laborer one or more

days per week from January to October of 2008.  The ALJ found that these activities were

inconsistent with Ms. Clauss' statements regarding the severity, frequency, and limiting effects

of her pain.

The ALJ then found that Ms. Clauss' statements regarding her pain and functional

limitations were not supported by the medical evidence.  Although Ms. Clauss stated that her

pain limited her severely, her medical records do not reflect severe debilitation.  Ms. Clauss

visited Salud Family Health twenty times from December 2005 to July 2010.   In nearly all of

these visits she complained of pain and requested or was given refills of her pain medications.

These pain medications were either Vicodin or Percocet. [4]   She was given a physical exam on at

---

[3]  Although Ms. Clauss worked part time during the relevant disability period, the ALJ found that this employment
did not constitute Substantial Gainful Activity.  The ALJ appropriately used this evidence to support her RFC
finding.  *See* 20 C.F.R. § 404.1571 (although work done during the relevant disability period was not substantial
gainful activity, it may show that a claimant can is able to do more work than the claimant actually did).

[4]  During the relevant disability period, December 2006 to June 2010, Ms. Clauss was prescribed either Vicodin
(also known as Lortab or hydrocodone) or Percocet (oxycodone) as her pain medication.  She received 10/500

least fourteen of these visits, often by Dr. Jaramillo. These exams generally indicated a normal or full range of movement for her spine without tenderness or apparent distress, with one exception. On September 14, 2009, Dr. Jaramillo noted decreased flexion and extension in Ms. Clauss' back, with spasms and tenderness. However, her exam on August 18, 2009, revealed no apparent distress. Similarly, her exam on November 3, 2009, indicated normal back flexion and extension with no tenderness. Ms. Clauss also reported exercising three times per week on August 25, 2009.

This evidence provides a substantial basis for the ALJ's finding that Ms. Clauss' symptoms were not disabling. Although Ms. Clauss reported pain to her medical providers and consistently requested or was prescribed pain medication, the records do not reflect corresponding physical limitations. With one exception on September 14, 2009, her exams reflected a normal range of motion along her spine. Additionally, Ms. Clauss often went months between medical appointments and had a relatively consistent level of pain medication from 2007 to 2010, which indicates that her medication effectively mitigated her pain. *See White v. Barnhart*, 287 F.3d 903, 909-10 (10th Cir. 2001); 20 C.F.R. § 404.1529(c)(3)(iv) (factors considered when evaluating symptoms include type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms). The ALJ also gave proper weight to Dr. Jaramillo's opinion, as explained *supra*. Keeping in mind her daily activities and the fact that she was able to work part-time, substantial evidence supports the ALJ's finding that the record did not support Ms. Clauss' statements regarding the severity, frequency, and limiting effects of her pain.

---

milligram doses of Vicodin until August 2009, when the records show her prescription was reduced to 5/500 milligram doses. The records indicate that she had a Percocet prescription in September 2009 for 7.5/500 milligram. In November of 2009, Ms. Clauss requested a return to Vicodin because she was unable to leave her job to fill her Percocet prescriptions. As a result, she was prescribed Vicodin in 10/500 milligram doses. These prescriptions were filled at either Carriage House, a health clinic in Boulder, Colorado, or via fax.

### 2.      Anxiety

Turning to Ms. Clauss' statements regarding the limiting effects of her anxiety, the ALJ addressed Ms. Clauss' anxiety in her decision at Step 2 of the sequential disability evaluation process.  She found that Ms. Clauss' anxiety was non-severe because it did not cause more than mild limitations in the areas of activities of daily living, social functioning, or concentration, persistence, or pace.   She also found that Ms. Clauss' anxiety had not caused extended episodes of decompensation.

The ALJ did not repeat this analysis in her RFC determination at Step 4 or 5.  In fact, the ALJ does not mention Ms. Clauss' anxiety after her Step 2 analysis, except for including "chronic panic attacks" as one of Ms. Clauss' asserted impairments.  Given that an ALJ should incorporate all the claimant's symptoms into his or her RFC analysis, the ALJ's failure to do so in this case was error.  20 C.F.R. § 404.1529(a); SSR 96-8p ("In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe"').

Based on her Step 2 analysis, it is clear that the ALJ considered the functional effects of Ms. Clauss' anxiety to be minimal.  The ALJ's decision to give Mr. Lowinger's opinion little weight also implies that she did not consider Ms. Clauss' anxiety disabling.  However, this analysis does not render the ALJ's error harmless.   The ALJ may have considered Ms. Clauss' assertions of anxiety-related limitations to lack support in the record.  However, it is also clear that Ms. Clauss was diagnosed with anxiety, consistently prescribed medication for anxiety from December 2005 to July 2010, and testified about the limitations imposed by her anxiety.  This evidence should have been incorporated into the ALJ's RFC analysis and analyzed in her decision.   Without further analysis regarding the limitations, if any, caused by Ms. Clauss'

anxiety, this Court cannot accurately review the ALJ's decision.[5]  As a consequence, the ALJ's

decision must be REVERSED and REMANDED.

### D.      The ALJ's Step 5 Findings

Finally, the Court addresses the ALJ's finding at Step 5.  The ALJ found that Ms. Clauss

was able to perform two jobs described in the Dictionary of Occupational Titles (DOT): photo

counter clerk and investigator of dealer accounts.  She based this finding on the testimony of the

vocational expert, whom she asked a hypothetical question.  In this hypothetical, the ALJ asked

the vocational expert to list the jobs available for persons with the following limitations: light

work; occasional kneeling, crawling, bending, stooping, crouching, fine fingering and handling;

and a high school education.  The ALJ also engaged in the following exchange with Ms. Clauss

after she confirmed Ms. Clauss had graduated from high school:

> CLMT: But like I also told Your Honor was I did that [sic] –
> ALJ: But you'd had the brain –
> CLMT: Right.
> ALJ: -- after that?
> CLMT: Right.
> ALJ: Yes.

The ALJ did not discuss Ms. Clauss' educational level in her decision, other than to

dismiss Ms. Clauss' statements that she had suffered residual effects from brain cancer

treatment in 1983.

The Commissioner contends that the ALJ's findings at Step 5 were supported by

substantial evidence because the ALJ appropriately assessed Ms. Clauss' RFC, including those

limitations supported by the record and dismissing those that were not supported by the record.

---

[5]  Although the ALJ afforded Mr. Lowinger's opinion little weight, on remand his records and opinion should be incorporated into the ALJ's RFC analysis of Ms. Clauss' anxiety.  To be clear, the Court is not requiring the ALJ to accept or reject Mr. Lowinger's opinion, only that it be part of the ALJ's overall analysis, as required by 20 C.F.R. § 404.1520b and SSR 06-03p.

According to the Commissioner, the ALJ did not need to consider or discuss Ms. Clauss' educational level because the ALJ appropriately dismissed Ms. Clauss' assertions that she had cognitive limitations.

Ms. Clauss argues that the ALJ erred at Step 5 because she did not address evidence contained in the record indicating that Ms. Clauss has limited cognitive ability.  Specifically, Ms. Clauss refers to a test administered in 2004 that indicated that Ms. Clauss had a mathematics grade equivalency of 5.6.[6]  Ms. Clauss submitted this test report to the ALJ at the hearing and argues that the jobs the ALJ found acceptable for Ms. Clauss require math skills beyond Ms. Clauss' abilities.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision."  *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation omitted).  The ALJ is required to accept and to include in his or her hypothetical questions those limitations or impairments supported by the record.  *Vail v. Barnhart*, 84 Fed.Appx. 1, 4, 2003 WL 22810457 (10th Cir. 2003) (unpublished).  An impairment does not have to be disabling in order to warrant inclusion in the hypothetical.  *Culler v. Massanari*, 9 Fed.Appx. 839, 843 (10th Cir. 2001). Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss the uncontroverted evidence he or she chooses not to rely upon, as well as significantly probative evidence he or she rejects.  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

In this case, the ALJ's decision did not discuss a test report Ms. Clauss submitted at the hearing.  This report indicated that she had a math grade equivalency of 5.6.  The ALJ was aware of this report because Ms. Clauss specifically referred to it during the hearing and supplemented this evidence with her own testimony as to her cognitive limitations.  However, the ALJ did not

---

[6]  The test report listed numerous math scores, but averaged them as a "Total Math" score of 5.6.

include any cognitive or educational limitations in her hypothetical questions to the vocational expert, despite the evidence Ms. Clauss submitted.  The ALJ instead asked the vocational expert to assume a person with a high school education when determining available jobs.[7]

The ALJ  apparently dismissed Ms. Clauss' statements that she had suffered residual effects from brain cancer, but she did not address Ms. Clauss' assertions of cognitive limitations in her decision.  Nor did she address the testing report indicating Ms. Clauss' limited math abilities.  Although the Commissioner argues that the ALJ properly rejected Ms. Clauss' assertions of cognitive limitations and, therefore, did not have to include those limitations in her hypotheticals to the vocational expert, there is no indication in her decision or the record that the ALJ considered these limitations at all, as was required.

Furthermore, the ALJ's failure to include cognitive limitations in her hypothetical was not harmless.  Although the two jobs cited by the vocational expert, photo counter clerk and investigator of dealer accounts, do not require high level math skills, they do require some math skills.[8]  Because the ALJ did not address Ms. Clauss' cognitive limitations, particularly with regards to mathematical ability, this Court cannot determine whether she is able to perform those two jobs.  As such, the ALJ's Step 5 determination that jobs existed in the national or regional economy that Ms. Clauss could perform was not supported by substantial evidence.

---

[7]  As noted, *supra*, the ALJ and Ms. Clauss engaged in a brief colloquy in which the ALJ states "But you'd had the brain --."  Although this appears to be a reference to Ms. Clauss' assertion of limitations related to brain cancer, it is unclear whether the ALJ considered this evidence and the ALJ did not modify her hypothetical to the vocational expert to include any cognitive limitations or impairments.

[8]  According to the Dictionary of Occupational Titles, a photo counter clerk requires a mathematical development level two, while an investigator of dealer accounts requirements a mathematical development level three.  These levels reflect the Scale of General Education Development, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance."  Although the levels span primary, secondary, and college mathematics, they do not specifically correlate with a grade level.  Dictionary of Occupations Titles, Appendix C, Part III.

For the forgoing reasons, the Commissioner of Social Security's decision is

**REVERSED**, and the case is **REMANDED** for further proceedings.

The Clerk shall enter a Judgment in accordance herewith.

DATED this 29th day of March, 2013

**BY THE COURT:**

Marcia S. Krieger
United States District Judge